First case this morning is case number 4150435, Kahn v. Gramercy and others. Did I pronounce Gramercy correctly? Yes. Okay, thank you. For the appellant, we have Sean O'Shea for the appellee, W. Ralph Canada, Jr. Mr. O'Shea. Thank you. May it please the Court, my name is Sean O'Shea and I represent the defendant appellants. Your Honors, the Gramercy defendants in this case did not initiate contact with Mr. Kahn in Illinois. They did not contract with Mr. Kahn in Illinois. They did not perform any part of the contract with Mr. Kahn in Illinois or otherwise avail itself of the protections of the State of Illinois. All of its conduct in performing what it was contracted to do for Mr. Kahn occurred outside the State of Illinois. All of the entities involved in the transactions were formed under Delaware law and none were formed under Illinois law or were located in Illinois. Importantly, there are 16 contracts governing the conduct of the parties. Sixteen contracts where Mr. Kahn affixed his signature. Mr. Kahn, a sophisticated businessman. All of them had New York choice of law provisions. Why does that matter? Well, it's matter... New York choice of law, that's if litigation occurs, but how does that matter on the question of whether or not there were sufficient contacts with the State of Illinois? Because under a State of Israel housing, Your Honor, and other cases, the choice of law provides foreseeability to the parties as to where litigation might occur. There's nothing to do with the ability of a State to assert jurisdiction in a given case, does it? I'm sorry, Your Honor, I didn't... There's nothing to do with the ability of a State to assert jurisdiction in a given case. A State, no. But that's the issue here, isn't it? There's more. Of these 16 contracts, the majority had forum selection clauses in New York. Aren't the... I'm not being clear. Aren't these two entirely different and unconnected issues as to the choice of a forum if litigation occurs, on the one hand? And on the second hand, whether litigation can be brought in a particular State, perhaps applying New York law, because that State has enough connections with the proceedings and the defendant to assert authority over. Absolutely, Your Honor. Then why are you arguing the first? Well, because that's what the case law says in terms of the tests set forth in Isringhausen and other cases in this district and in other districts, as well as the inquiry in both Isringhausen and in Electrolux, the court looks to sort of the expectations of the parties. And choice of law in forums selection goes to expectation of the parties where they might litigate. And that's why it's important. It's not something I bring up because it's not something I just pulled out of the air, Your Honor. It's something I pulled out of the precedents that guided the court previously in this matter, in matters such as this. The focus, Your Honors, of the plaintiff's briefing, I think, betrays the weakness of its argument. Because if you look at the plaintiff appellee's briefing, it focuses on a claim joint venture between BDO and my clients. And the focus on joint venture is a necessary repackaging of their original arguments. Because their original arguments were based upon trying to rope Gramercy into Illinois based upon a conspiracy, a claim of conspiracy. This court in Electrolux and other courts in Illinois have said that conspiracy theory can't be used because you must focus on the acts of the defendant as to whom the plaintiff is trying to litigate in this forum. So if you strip the irrelevancies out of the plaintiff's brief of claims of joint venture, which I'm going to talk about in a few minutes, and if you strip the activities of Mr. Kahn, relevance of third parties like Mr. Kahn or the party, Mr. Kahn, the plaintiff, and third parties like BDO, and just focus, as the Supreme Court teaches us in Walden against Burey, you're left with a plaintiff, Mr. Kahn, who sought out Gramercy in New York and Connecticut to provide certain raw materials that would be used in tax shelters. And he wasn't a stranger to tax shelters. He had done two previous tax shelters with BDO, and he'd known them for many years. In fact, he had known them prior to the existence of Gramercy. So the claims of conspiracy and joint venture are particularly ironic, given the fact that he had a longer relationship with BDO than did my clients. As I said, this Court and other courts in this state, but in particular in Isringhausen, has relied on a four-part inquiry. One, who initiated the transaction? Two, where was the contract negotiated? Three, where was the contract formed? And four, where was the performance to take place? And finally, as an addition to that four-part inquiry, is there a choice of law provision? Because as I said earlier in Justice's statement, it goes to foreseeability, according to the case law. Here, as I said, Mr. Kahn had a relationship going back with BDO to 1993. It's undisputed that he came to Connecticut to meet with Gramercy before initiating the contracting process. And the circuit court found, Judge Ford, found that he introduced Kahn to Gramercy, that BDO introduced Kahn to Gramercy, and the first meeting was held outside the state of Illinois. The contract was formed, negotiated, drafted, all in New York. It was performed wholly in New York, mostly in New York and Connecticut, but in some cases in foreign jurisdictions where distressed debt was obtained for Mr. Kahn. And the contract, as I said, had a choice of law provision, and many of these contracts also had form selection of provisions, all provided for New York jurisdiction. Even the operating agreements, the various operating agreements that were formed by Gramercy in connection with its contractual duties were formed under Delaware law and had Delaware choice of law provisions. So this case is very close to this court's precedent in the state of Isringhausen, where the plaintiff was put in touch with the defendant by a third party, the plaintiff traveled to the defendant's home state to initiate negotiations, the plaintiff thereafter communicated by phone, fax, and mail, and the defendant sent a contract to the plaintiff, which in Isringhausen the plaintiff executed here in Illinois, and finally the contract contained the choice of law provision in Isringhausen, providing for the choice of law of the defendant's home state. And on those facts, the court found personal jurisdiction did not lie. Now the court's reasoning in a similar case, Electrolux, is also instructive to our decision here. In addition to a flat-out rejection of a conspiracy theory, which relates to the actions of third parties, which is quite similar to what Mr. Kahn has asked this court to do, it emphasized, this court did in Electrolux, the constitutional concerns of relying on unilateral activity of a third party, which the plaintiff claims has some relationship to the non-resident defendant. Just as in Electrolux, here the plaintiff is attempting to jerry-rig specific personal jurisdiction over grammarcy by pointing to and relying on the in-state activities not of grammarcy, but of third-party BDO and its back-office payment administration. And as I'm going to get to a little bit later when we talk specifically about BDO, the actions of BDO, in fact, were actions of BDO and its New York office. And what Mr. Kahn's attorneys have tried to do is argue that because BDO is headquartered in Chicago, therefore anything done by the New York partners of BDO and the Michigan partners of BDO  Electrolux says it does not. But in Electrolux, this court cited the United States Supreme Court decision, worldwide Volkswagen, which held that contact with a form state will only confer jurisdiction when the defendant himself had control over the geographic target and chose to direct his activities at the form state. The unilateral activities of those who claim some relationship with the non-resident defendant can't satisfy the requirements of contact with the form state. So the holdings in Electrolux and Isringhausen demonstrate that there's no specific personal jurisdiction here. Mr. Kahn was referred by BDO to grammarcy, something he admits, something Judge Ford below found. None of the dead instruments or trades were sourced or took place in Illinois. They all took place in New York and foreign jurisdictions. The party chose New York. What about the fact that BDO was headquartered in Chicago, and that grammarcy's, why couldn't we view grammarcy's agreement with BDO as enabling grammarcy to tap into BDO's client base in Illinois? Well, again, because you want to follow, Your Honor, if you do that, Walden against Fiori, United States Supreme Court, or the Electrolux decision, which follows that and follows worldwide votes, right? Because you're referring to the activity of a third party. And the case law holds that for constitutional due process reasons, to hail someone to court, it has to be referenced to their activities, not the activities of a third party. And I would argue, Your Honor, that's why my adversaries are arguing that this is a joint venture, even though in no way is it a joint venture. There's no way is there sharing of profits and losses. There's no way of their joint control. Really, my client is a vendor. Is that what's required? It can't be just an agreement to assist each other? Yes. That's what's required. An agreement to assist, merely an agreement to assist, an agreement to have joint efforts, is not a joint venture. Didn't BDO itself pay Gramercy something? BDO, Gramercy billed BDO, BDO billed Mr. Conn for the services. So BDO was the contractor, Gramercy was the subcontractor. What did Gramercy bill BDO for? For providing for the trades, digital options trades, for sourcing distressed debt, and for following the instructions of BDO on setting up the companies in Delaware that did those transactions. So, again, the contracts did not contemplate Gramercy ever traveling to Illinois or transacting business in Illinois. All of the LLCs performed their obligations outside of Illinois, at least while Gramercy was involved. And there's one situation in the briefing on a company called Jonction, J-O-N-C-T-I-O-N, or T-O-N, I'm not sure. And my adversaries make much of the fact that after Gramercy was no longer involved, Mr. Conn moved Jonction back to Illinois. But anything Jonction did in Illinois was after the fact, after my client was removed from any activity with Mr. Conn. And, again, Mr. Conn agreed 16 times in writing that the choice of law should be New York. Now, Gramercy, we have cited numerous cases establishing that even extensive communication with a foreign resident in connection with a transaction is not sufficient alone to support personal jurisdiction. In those cases we cite, follow the Supreme Court's teaching in Walden v. Fiore, that the plaintiff cannot be the only link between the defendant and the forum. And the defendant's conduct, the defendant himself, his conduct, must tie himself to the forum. And, notably, the court below did not even mention Walden or provide any analysis of Walden. The cases cited by my adversaries, and there are seven, all deal with situations where a contract was formed or initiated here in Illinois, where products were made in Illinois, or services were performed in Illinois. So they're all distinguishable on that basis. Well, but that's to say businesses are different. This is a different sort of business than the cases that were cited. Do those cases depend on the particular businesses and business relationships that were present there? Well, no. Well, they're different businesses, for sure, Your Honor. But it does depend on the business. And, for example, just to pick one of the cases, Autotech he relies on, my adversary. Autotech was a circuit board case where the circuit boards were manufactured here in Illinois. And the court held that essentially at least part of the performance was in the state of Illinois. Well, similarly, all of my client's performance was outside the state of Illinois. Mr. Kahn came to Connecticut to engage my client. Now, had my client done digital options trades in Chicago, for example, with a counterparty in Chicago, that might be part performance. But the fact is, Your Honor, all businesses are different. All fact sets are different. But the court's precedent requires some action on the part of my client within the state of Illinois to subject it to self-jurisdiction. It has to direct some conduct in the performance of the obligation, the contractual obligation here in Illinois. Now, just a little bit, because I promised I'd talk a little bit about this joint venture argument. Essentially, this is a Hail Mary that was lobbed in after the close of briefing. After the close of briefing before Judge Ford, 80 pages of briefing by my adversaries, they changed their claim to one of conspiracy to a joint venture. We had produced. Was that a change or an addition to? Well, I suppose, Your Honor, we're talking about semantics. But we would say it's a change because they were running headlong into Electrolux. But if it's an addition. That was a decision of this court some, what, 15 years ago, the Electrolux case? Let me find it for you, Your Honor. I have it as 2007, Your Honor. Well, I'm sorry. It was more recent. But the reason I mention this is because the trial court is bound by it, but we're not. So I suppose the question is, to the extent that Electrolux bars them, was it rightly decided? And should we adhere to it? Well, I think you should adhere to it because, Your Honor, Electrolux is itself adhering to Supreme Court precedent. Well, it was, as I understand it, this court's assessment of Supreme Court precedent based upon the particular business circumstances of that case. Of course, Your Honor. Of course the facts dictate. But what I'm after saying is the facts here show, guided by Walden against Fiore, is that you have to look to the defendant's own conduct rather than the conduct of third parties or the plaintiff. So that's what I'm referring to. Your Honor, as to the joint venture, it was added only after 80 pages of opposition briefing, first time five months after completion of briefing, more than five years after jurisdictional discovery had begun. And the claimed evidence consists of an allegation that BDO and Gramercy split fees. Of course, fee splitting is not sufficient to be a joint venture. The only new evidence that my adversaries pointed to is an affidavit. And this is an affidavit from a person with knowledge, Mr. Shanron, who was a partner in Michigan, BDO partner in Michigan. Mr. Shanron conspicuously failed to call this arrangement a joint venture. He called it, quote, joint efforts. My adversaries could only point to a use of joint venture, quote, in an email authored by someone who was not involved in the relationship between BDO and my client. The Judge Griffin, who dealt with two similar cases, Koh and Kaufman, held that this same attempt by my adversaries was a belated cumulative submission and rejected it. And the material doesn't provide for a joint venture. Say that again. Your Honor, Judge Griffin and Koh and Kaufman, which are cited in our briefs. Is that the Cook County case? Yes, Your Honor. Well, that's worth less precedential value than even our forward decisions. I'm not arguing, Your Honor, that it has precedential value. I think it's useful, Your Honor, just to know that another judge has looked at two other cases, same arguments, same evidence, and come to that conclusion. Did he move to strike this argument before Judge Ford? Judge Ford said he wasn't considering it. I'm sorry. I don't think that's responsive to my question. He wasn't considering what? Did you move to strike this argument before Judge Ford? We opposed it, Your Honor. I don't know that we opposed it explicitly in a motion to strike, and Judge Ford said that he wasn't going to consider it. Before your time is up, counsel, I wanted you to get in almost all of your argument, and I think you have without an interruption in this point of mine, but I want to ask you and I want to ask Mr. Cannon about something that is very disturbing in this case, and that is it appears to be joint motions by the plaintiff and the defendant to seal the briefs before this court as you sealed the record before the trial court. What I want to know is what is the authority for any of this? What is the explanation for any of this? And by asking this, I want to express my strong disapproval of the entire process and give you a chance to explain it, as I will ask counsel for Mr. Cannon as well. Thank you, Your Honor. The court issued, Your Honor, an order to show cause. We withdrew any motion to seal it. Well, that's entirely understandable since, in my view, there's no colorable explanation for you to have ever agreed to it or sought it in the first place. So my question is what was the basis of you doing that in the first place, as I will ask Mr. Canada when he speaks. Well, Your Honor, my co-counsel has told me that it was from earlier in the case. He did it before Judge Ford, and to his discredit, he granted this motion. No. It was all sealed at the trial level. Was it not? I don't remember whether it was sealed, Your Honor, but certainly the court agreed to it might have been a stipulated protective order. Yes, sealing everything. I want to know what the authority is of this and what the basis is of your request. Well, Your Honor, I'm not seeking that here, and as I said, we withdrew it. I'm asking for your justification of your past conduct, counsel. You did seek it at one point and succeeded. You sought it or agreed to it in front of Judge Ford and succeeded. I want to know what the basis is of this. Your Honor, I don't have that information now, but I will certainly provide it to the court. Well, okay. As I say, I intend to ask Mr. Canada as well. Okay. Thank you, Your Honor. Thank you. You are out of time. Thank you, Justice. May it please the Court, Ralph Canada here on behalf of the Cons for Champaign. Would you like me to start with the sealing question? That would be just fine. What happened in the trial court was the only way in which numerous parties and non-parties would produce documents  and they related to tax transactions and that under a federal statute, and I can't off the top of my head recall the statute, but it's actually a criminal offense sometimes to produce documents that violate that. So the only way they would produce documents was with a very strict protective order. Who's they? BDO Seidman, former employees of BDO Seidman primarily. And so those documents constitute a lot of the evidence in the trial court and before this court and the protective order that they insisted upon in order to produce those documents. They're the defendants here, aren't they? I'm sorry? They're the defendants here? Correct. So they insisted on this protective order so otherwise they're not going to produce documents? That was what they said, Your Honor. How about then you default them out? That's another possibility. I mean we're talking about a pretty fundamental constitutional issue here, counsel. The courts are public fora and this court in particular has addressed this on multiple occasions that litigants don't have the right to shut the public out from public documents. And this was blithely ignored in this case, it's my position, by both sides here. And I'm kind of astonished and it is not to the credit of Judge Ford, he accepted this. At most, assuming you had a colorful, strong basis with regard to document A, B, and C in this litigation, you could have sought to have an in-camera inspection of documents A, B, and C as the case might be and sought to have those particular documents sealed. The whole court file sealed and all these briefs sealed? That's what the protective order requires, Your Honor. Okay, well, go ahead. So in responding, I think the place to start perhaps is a quote from one of the briefs. And the quote is, in connection with the cons tax shelter, Gramercy exchanged mail, phone, and electronic communications and payments with the cons in Illinois. Now you might think that was from our brief, but that's actually from the appellant's brief. And our view is, setting aside all the things they dispute, that alone gives you jurisdiction under numerous of cases in Illinois. The Collada case and numerous cases that we cited. Where is that in their brief? It's at page 30 of the briefs in both cases. We think that alone is sufficient contact with the state of Illinois. It's important to note, most of Mr. O'Shea's argument was directed at the breach of contract, subsection 7 of your long-arm statute. But we moved also under the catch-all provision. And I think it becomes a very simple case when you look at what the contacts are, retaining counsel in Illinois to assist them. They dispute the meeting, but besides that, they don't dispute there were numerous phone calls with Mr. Kahn in Illinois, where he's in Illinois, at which we allege, or in which we allege, the misrepresentations were made. There are these numerous agreements that were made. Well, is that enough? I think it is enough. The call itself? Yes, sir. If the misrepresentations are made and that precedes the signing of the contract, I think that's enough under due process. I mean, they get off on a theory of Walden, which I think is just wrong and incomprehensible. If you actually go read Walden, first of all, it didn't make any new law. What Walden says is, Justice Thomas says, if I can get to the right page, Walden was decided on well-established principles of personal jurisdiction and sets forth the following test for jurisdiction. The proper question is whether the defendant's conduct connects him to the forum in a meaningful way. This is not a case where everything happened out of the state. There were numerous agreements sent to Mr. Kahn. There were numerous phone calls with Mr. Kahn. The agreements themselves provide, under a power of attorney provision, for performance perhaps elsewhere, but if the power of attorney provision was not in there, then they would have been sending many, many more agreements into the state of Illinois. There are dozens, if not hundreds, according to Mr. Kahn's affidavits, of account statements and things like that sent into the state. There's the invoicing of BDO Seidman pursuant to their agreement. Whether or not you characterize it as a joint venture, it's clear they had an agreement with BDO Seidman, in fact, several agreements, according to the Paul Schambraum affidavit, that predate any contact between Kahn and Gramercy and inform your decision there. Mr. Hoschei makes light of it, but in connection with the distressed debt investment, which was the subject of this current appeal I'm in front of you on, this junction entity was relocated to Illinois and Gramercy retained an interest in it. Therefore, Gramercy had an interest in an Illinois partnership with Mr. Kahn that is related to the transaction. And most important, because Mr. Hoschei didn't really talk about it, but these are tax transactions. No doubt about it, the damages are what happened with the IRS, the assessment of taxes, interest, penalties, and so forth. The tax transactions conclude only when you file a tax return. And you, an individual, Mr. Kahn and his wife, can only file a tax return when a K-1 is furnished to them which sets forth the alleged losses or other beneficial tax treatments from the transaction. Gramercy, in connection with the distressed debt transaction, sent 16 K-1s, according to the record, that it had the obligation under the various partnership agreements to make sure it got prepared and to allocate losses and gains, 16 of those, into the state of Illinois with Mr. Kahn. And that is the operative document that triggered the loss on a tax return, that triggered the damages we're suing on. What was their response at the trial level to that particular point you just made? Or now? The K-1s were prepared outside the state and therefore don't count. Again, it's... Sending them into the state for the current signature? Right, right. That is their point. And we just simply don't agree with it. I think, again, it's based on a misreading of Walden and the idea that Walden... I don't know what would satisfy Walden, frankly. Under their analysis, it sounds like unless Gramercy came into the state, punched Mr. Kahn in the nose, there's not a jurisdictionally sufficient contact. What Walden actually says is, the exercise of personal jurisdiction over defendants who have purposefully reached out beyond their state and into another, for example, by entering into a contractual relationship that envisioned continuing and wide-reaching contacts in the forum state is proper. That quote could have been lifted out of numerous opinions of this court and other courts in Illinois. It also says, to be sure a defendant's contacts with the forum state may be intertwined with the transactions or interactions with the plaintiff or other parties. So that's what happened here. The fact that they're sending something to Kahn is a jurisdictionally relevant contact. The only thing Walden was doing is setting an outer barrier saying, this particular set of facts, where nothing at all ever happened in the state, is not good enough. And he says, Justice Thomas says not once but twice, no part of petitioner's conduct occurred in the body in Walden. I'm sure the court's familiar with the facts and how two people having interactions at the Atlanta airport doesn't create jurisdictions in Nevada. But that is not this case. There are dozens of interactions with Mr. Kahn in the state of Illinois and they all start with the agreement with BDO Seidman. And they all depend upon Gramercy's involvement because Gramercy is the one supplying the distress debt and ultimately the K1s that reflect the lawsuits. Let me ask this, counsel. Yes, sir. It's a little bit tricky to figure out. We have multiple defendants here. And you're talking about Gramercy. Is that Gramercy Advisors? And does all of this apply as well to Gramercy Asset Management and Gramercy Financial Services and Tall Ships? They're all... How does that all work? Gramercy Advisors, Gramercy Asset Management are partners in the various partnerships involved. So it applies to all of them. The others are all partners. Tall Ships is the same. So I think it applies equally to all. They all were parties to the transactions. They're one step removed, though, aren't they? For instance, you mentioned Gramercy sent the K1 to the Kahn. So it was Gramercy Advisors, wasn't that? That was Gramercy Advisors. Okay. So to hold, and I guess it's important, I don't even understand why, but assuming it's important, Gramercy Asset Management and Gramercy Financial Services, those separate corporate entities are connected with Gramercy Advisors. But in order to assert jurisdiction over them, what's the connection, what do the Kahn's have to show? Right. I think the Kahn showed, I'll have to look back, but I think the Kahn showed in the briefing each of those was connected to these transactions, which took place over two years. Connected in what way? As partners and, one second. In purchasing the distressed debt, this transaction is a multi-level partnership transaction involving, ultimately, the purchase of distressed debt. And the various of the Gramercy entities, the ones we sued, were involved in different stages of the two different years of transactions. Sometimes Gramercy Advisors, sometimes Gramercy Asset Management. Well, possibly it's confusing because they have Gramercy in their first name, but if these were X, Y, and Z corporations to make it, you know, as corporations, they're separate legal entities. Is this purchase of the debt sufficient for the state of Illinois to be exerting jurisdiction over these separate corporate entities? Well, I think it is. And this argument was not made, which I think if they were going to make it, they should have in the trial court. This argument was made? It seems to be pretty basic stuff. I don't think it was ever raised. And, of course, if the court reaches the joint venture argument, I think that wipes out everything. And the joint venture argument, just for the sake of the record, I don't recall any motion to strike. And we put evidence into the record, and the evidence was unrebutted in the trial court. Their position now is essentially you forfeited it, but you forfeited it at the trial level because it was late. I would expect there to be a motion to strike, and you're saying there wasn't? There wasn't a motion to strike, Your Honor, that I recall. There was simply a request not to strike it, but the request I remember was, let's take some more discovery, which the court declined to allow. So it's in the record, and given that this is clearly a de novo review, the court can consider it. If the court considers the joint venture theory, it doesn't have to deal with Walden or anything else. That's the end of this. There's no doubt BDO Seidman, with the numerous partners that were involved from Chicago and its executive offices being in Chicago, had more than sufficient contacts to create jurisdiction. So your argument is at the trial level, defendants never made any distinction between programmercy advisors, asset management, financial services, tall ships? Right. I don't remember any, Your Honor. And there's certainly none made in the briefing in this court. Opposing counsel cited history, housing, and electric lots several times during this argument. What's your response to the positions he's set forth? Well, Isringhausen was, I'm sure I'm botching that name, but is very, very different on its facts. It was a contract to build a house in Florida. Everything took place there. Literally the only thing that happened in Illinois was the contract being signed here. Again, that is not what happened here. We have these hundreds of things, account statements, agreements, and most significantly the K-1s being sent to Mr. Kahn in Illinois. I'm sorry, I didn't hear your answer. The only thing that happened in Isringhausen was what? The contract was signed in Illinois, but it was all about Florida. The meetings took place in Florida. It was a contract to build a house in Florida and so on. That's the distinction. Here there were numerous connections with the state of Illinois, most significantly the furnishing of the K-1s into the state. The Electrolux case, the key fact in that case, as I recall, there was no allegation of any activity purposefully directed at Illinois. In this case, if I'm citing to the right case here on my notes, and in this case, that's certainly not the case. We're saying all of this was directed at Illinois from the day they went and formed agreements with BDO Seidman. By the way, in terms of the joint venture analysis, if you read the Shambrom affidavit and the notes attached to it, I think you'll find there is not only a division of profits, but you'll see they talk about having to put money up to pay for certain expenses. So that sounds like an expense sharing arrangement too. So I think it satisfies the joint venture test, even if you want to apply it strictly. But from the day BDO and Gramercy agreed that they were going to jointly market these transactions to BDO's clients, and they then sought BDO clients in Illinois, that's purposefully directing something at the state of Illinois. We agree the choice of law provisions are certainly not dispositive. There's been no argument made in any of the briefing at any level that I recall about forum selection clauses, and I'm not aware of any in the contracts. The idea that having a relationship with BDO Seidman doesn't necessarily tie them to Illinois seems disingenuous. The record reflects that the agreements had to be approved by Dennis Field, the CEO of BDO Seidman, who was in Chicago. They sent their invoices to Chicago, and they were approved there. Whether or not they might have been paid out of somewhere else, they were approved there. There was a fellow named Robert Greisman and other partners that were involved in these transactions that are shown on the various email exchanges. So there's more than sufficient context under cases like the Illinois cases. Where is the status of this case? If we were to affirm the trial court, what would that mean? Where would this case be? There is currently some motion to dismiss briefing. I'm sorry, in this case, I think the case would just start going forward finally. BDO Seidman, I think, is the only remaining defendant in this case, in the distressed debt case. When was it filed? 2009. It's taken all this time just for this business about jurisdiction? Well, I think as the court is aware, there were numerous appeals with other parties. It took a lot of time, and there has been a lot of time on jurisdictional discovery to that point. I'll tell the court, we finally, there were numerous motions to compel pending, even when we told the judge to just proceed forward and rule. We don't think we need anything more than what we have. We think we have plenty. So discovery is continuing to proceed forward as to other parties to a limited extent. Some briefing is going forward on some motions, and that's primarily in the other case. But we'd be ready to get going forward based on the discovery we're getting. So unless the court has any questions, I'll conclude. I see none. Thank you for your argument. Thank you. Is there any rebuttal? Yes, Your Honor. Okay. My adversary, Mr. Canada, just talked about Isringhausen after saying that phone, fax, and mail was sufficient to confer specific personal jurisdiction. In our briefs at pages 32 through 34, we cite many, many cases that say that, and I'll quote from the Seventh Circuit case of federated rural electric at 32 of our brief, the Seventh Circuit has stated, quote, making telephone calls and mailing payments into the form state are insufficient bases for jurisdiction. We go on to cite roughly a dozen cases beyond that that say the same thing. Isringhausen, which Mr. Canada just misstated the facts of, involves someone executing a purchase agreement for a sale of a house in Illinois and mailing it back. And the relationship that was found to be not sufficient for specific personal jurisdiction was based on phone, mail, and fax communications between the builder of the house and the buyer here in Illinois. So he's wrong. Phone, fax, and mail are not sufficient if it's just communication between the plaintiff and the defendant absent some performance of the contract. The invoice, his talk about BDO, it absolutely does violence to the record. We dealt with BDO in New York. We dealt with a BDO partner in Michigan. The back office conduct of BDO is the activities of a third party, and where they process their payments, whether in Chicago or elsewhere, is not relevant to the issue of specific personal jurisdiction over my clients. By the way, he also misstated our position below in front of Judge Ford on the joint venture theory. The joint venture theory, as I said in my opening remarks, was after 80 pages of briefing, and only then did they come up with what they claimed were five pieces of evidence. We opposed that submission, and Judge Ford said it would not be considered. So whether you call it a motion to strike, whether you call it a motion not to consider, we had a ruling, and those are the facts from below. It's their burden, Your Honors, to establish specific personal jurisdiction as to each of the defendants. It's not ours. He talked about Johnshin and about Johnshin being moved to Illinois and Gramercy retaining an interest. The fact is that it was an act of Mr. Kahn to move Johnshin to Illinois, not an act. Remember, under Walden against Fiori and other Supreme Court cases, and this Court's president in Israel, you have to look to the actions of the defendant, whether he entered the forum purposely. But he mentioned retaining counsel in Illinois. This is dealt with at length in our brief. We retained counsel in New York, McDermott, Will and Emery, corporate counsel. They asked a Chicago tax partner, a guy named Dick Lifton, to look at certain tax issues. Again, the act of a third party. The question here that this Court has to determine is, did Gramercy or any of the Gramercy entities purposefully enter the state, enter the state of Illinois and purposely avail itself of its protections? I wonder if we would answer that question differently for Gramercy versus two or three or more of the other LLCs. Where would that lead the litigation? Well, I think, Your Honor, frankly, you'd be hard-pressed to do that as to any of them, because the LLCs themselves are all formed outside the most they would have done. And by the way, the K-1, they're sent to Illinois by BDO. And Mr. Kahn, even after he left Gramercy, signed a document saying, I have neither received nor relied on any tax advice by Gramercy. So that's a misstatement of the record. But even if it weren't, someone is sending a K-1 as a result of a taxable transaction, would essentially swallow whole the protection of specific persons. I'm not sure you answered my question. I'm getting to it, though. The question is, I don't know that Your Honor could, and I don't know that my adversary has met their burden on any. And they haven't parsed it out, because it's their burden as to each of those entities. And they haven't gone to the trouble. They're just throwing a lot of mud against the wall and hoping it sticks. But it's not my burden, respectfully. It's not my burden to say that we've met, for the plaintiff, that we've met our burden as to each and every, because it's their burden, is the direct answer to Your Honor's question. My question is this. You heard Mr. Canada's representations with regard to the sealing of the record below. He seemed to suggest it was at the request of, if not the defense, at least some actors on behalf of the defense. Is that correct? Your Honor, I believe it was on behalf of a lot of different actors. I'm told it was not driven by us at all. So it had to be driven by somebody. Your position is it wasn't the defense that sought this? It was the plaintiff? It was not, Your Honor, and I'm told that with emphasis. And I can have my partner come up here and answer you the question in greater detail. I'd like to hear that. And I should also say it's a multi-party litigation. But he has the day-to-day knowledge. Maybe he can answer the question for Your Honor. Please identify yourself and then respond to the question. My name is Michael Petrella. I'm with O'Shea Partners. I'm Mr. O'Shea's partner. Mr. Canada is correct. This was driven by BDO. We have a separate litigation against BDO in Connecticut. They put us through probably three to five months of wrangling over a protective order. We had to go back and forth negotiating a motion under this tax statute that Mr. Canada mentioned. They just will not produce anything unless they do what they feel is required under this federal statute. So it is correct, as Mr. Canada says, that they are the driver. Thank you for that representation, counsel. Okay. Thanks to all of you. The case is submitted. Court stands at recess.